**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**Ismelda Hahn,** **Civil No. 00-2282 (RHK/SRN)**

**Plaintiff,**

v.

**ORDER**

**Minnesota Beef Industries, Inc.,**

**Defendant.**

---

Celeste E. Culberth, Esq. and Leslie L. Lienemann, Esq., on behalf of Plaintiff Ismelda Hahn.

William J. Egan, Esq., on behalf of Defendant Minnesota Beef Industries, Inc..

---

SUSAN RICHARD NELSON, United States Magistrate Judge

This matter is before the undersigned United States Magistrate Judge of the District Court on Plaintiff's Motion for Sanctions (Doc. Nos. 39-1; 39-2; 39-3; 39-4; 39-5) dated February 25, 2002. Plaintiff seeks sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedure for Defendant's repeated failure to produce discovery in a complete and timely fashion, and for Defendant's production of a database upon which Plaintiff, her counsel and experts relied, which Defendant now concedes contains quantities of inaccurate information. For the reasons discussed below, Plaintiff's motion will be granted in part and denied in part.

**I. <u>Background</u>.**

Plaintiff Ismelda Hahn claims that Defendant Minnesota Beef Industries, Inc. ("Minnesota Beef") discriminated against her on the basis of race and national origin in connection with her rate of pay, discriminated against her on the basis of pregnancy through

FILED MAR - 8 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD ______
DEPUTY CLERK ______

Defendant's alleged failure to accommodate her work restrictions, and alleges battery against one of Defendant's owners in connection with two or more alleged instances of inappropriate touching.

On September 18, 2001, Plaintiff served discovery requests, primarily directed at fundamental information regarding pay rates and work restrictions, essential to her case. Defendant served its responses on October 23, 2001, objecting to the majority of information requested, and seeking to produce a narrowly defined set of documents in response. Plaintiff's counsel attempted to identify the deficiencies in these discovery responses in order to resolve them short of bringing a motion. Her failure to secure cooperation from Defendant, however, required her to file a Motion to Compel on November 15, 2001, to meet the Court's original non-dispositive motion deadline in this case's Pretrial Scheduling Order.

On November 16, 2001, Defendant served its Motion for Summary Judgment. The Court's briefing schedule required Plaintiff to file her materials with the Court on December 28, 2001.

On December 11, 2001, this Court heard Plaintiff's Motion to Compel Discovery Responses. The Court ordered from the bench that Defendant provide discovery relating to wage and pay information and work restrictions. In its Order, the Court also narrowed the class of individuals involved to those working in quality assurance and in the boning room. The Court asked defense counsel when he could produce the discovery ordered. Defense counsel represented to the Court that he would comply with the Order on or before Tuesday, December 18, 2001. Defense counsel failed to comply.

On December 19, 2001, the parties participated in a telephone conference with the Court

regarding Defendant's failure to comply with the Court's Bench Order. During the telephone conference, defense counsel conceded that he had not complied with the Order, but expected to do so by December 20, 2001.

On December 20, 2001, Defendant produced a group of documents. Although some of the documents complied with the Court's Order, Defendant failed to provide much of the documentation ordered by the Court on December 11, 2001. Moreover, Defendant did not provide the written supplemental responses ordered by the Court.

On January 7, 2002, Plaintiff faxed to Defendant a letter describing the deficiencies in the documents produced, and alerted Defendant that she would be required to file a second Motion to Compel and a Motion for Sanctions by the end of the day on January 8, 2002. Defendant failed to respond to Plaintiff's letter. At the close of business on January 9, 2002, Plaintiff filed a second Motion to Compel. Faced with an impending Motion for Summary Judgment and a significant amount of discovery yet to be produced, the Court agreed to hold a second telephone conference to consider Plaintiff's Motion to Compel on an expedited basis. On January 10, 2002, the Court considered the discovery dispute.

During the second telephone conference with the Court, Defendant admitted that it had not fully complied with the Court's Order and apologized for failing to do so. Defendant claimed that it did not understand the Court's Order and believed that by providing pay reports, as opposed to electronic data it had sufficiently complied with the Court's Order. Importantly, Defendant urged at this telephone conference, and at subsequent telephone conferences, that Plaintiff could fully and fairly rely on the pay reports in preparing her case for trial. Defendant argued that the pay reports were complete and accurate, providing all the information that

Plaintiff needed. Defendant represented that it would deliver more detailed pay reports by Friday, January 11, 2002, and that it would also make an effort to comply with the remaining outstanding discovery. The Court directed that the parties would have a third telephone status conference on Monday, January 14, 2002.

Despite the Court's clear Order that Defendant provide Plaintiff with the data requested in electronic form, Defendant then represented to Plaintiff's counsel that it was impossible to deliver pay data from its computer in electronic format. Aff. Of Celeste Culberth. In a subsequent telephone conversation, Defendant's counsel represented that his client could not download the data because he would have to buy a new software license. Id. Finally, Defendant represented to Plaintiff that his client could not segregate the data so as to only download the boning room and quality assurance employees, consistent with the Court's Order. Id. Subsequently, however, despite these representations, Defense counsel eventually delivered data, which was segregated in precisely the way the Court had requested, without having to purchase any additional software license.

In a report to the Court dated Monday, January 14, 2002, Plaintiff's counsel detailed for the Court further deficiencies in this last production. Defendant had failed to produce the personnel files ordered by the Court, and had not produced records regarding the physical accommodations of a particular witness.

On January 14, 2002, at 11:30 a.m., the Court held a third discovery telephone conference with the parties. Defendant argued that it should not be required to provide personnel files or electronic data because again, Plaintiff could fully and completely rely on the accuracy of the reports provided to her containing pay rate information. The Court ordered that Defendant

deliver the personnel files and the electronic data immediately. Given the admitted failure of Defendant to provide the information repeatedly ordered by the Court, and the inability of the Court or the parties to proceed to consider a summary judgment motion with such significant and fundamental discovery outstanding, the Court struck Defendant's Summary Judgment Motion.

On January 22, 2002, Defendant delivered 14 boxes of personnel files for boning room and quality assurance employees, canceled checks, a financial report, and computer disks to the offices of Plaintiff's counsel. Again, in violation of the Court's Order and in lieu of providing the database to Plaintiff in electronic format, Defendant simply provided the previously delivered computer reports, upon which Defendant urged again that Plaintiff should rely, in a word document format. Despite the Court's Order that record layout and documentation of all coded fields be produced, they were not.

On January 25, 2002, Plaintiff's counsel contacted Defense counsel and again noted the deficiencies in the electronic data produced. Defense counsel represented that the data would be produced that day. A set of data was produced and forwarded to Plaintiff's expert.

Plaintiff also advised Defendant that the production of personnel files was incomplete. Defendant had provided 21 files of current employees who work in the boning room and quality assurance, approximately one third to one half of the total employees whose files were to be produced.

On January 27, 2002, Plaintiff discovered that the data delivered was not, in fact, the database requested, but rather instead selected information from the database. The Court scheduled another telephone conference with the parties for January 30, 2002.

On January 30, 2002, during its fourth telephone conference with the parties, the Court

ordered that Defendant provide the complete database to Plaintiff as it had ordered many times before, rather than selected fields it chose from its records. Plaintiff's counsel also advised the Court that many of the personnel files failed to contain basic pay information. Defendant advised the Court that its staff had fallen behind on filing pay raise information in personnel files, and promised to deliver it.

On February 1, 2002, Defendant delivered some electronic information on a Jaz disk.

On February 7, and February 13, 2002, the parties participated in settlement conferences with the Court. During the settlement conference on February 13, 2002, Defendant reluctantly advised the Court that the reports of pay information, which Defendant had repeatedly urged this Court to accept and urged Plaintiff to rely on in lieu of an electronic database, were inaccurate in fundamental and critical ways. The field known as "rate of pay" which Plaintiff and her expert had relied on in working up the disparity of pay claimed in this case (then anticipating a March 1, 2002, trial date) was inaccurate. Further, the code which indicated the type of work each employee performed at Minnesota Beef was inaccurate. So, for instance, the records revealed that employees of Minnesota Beef who were designated by their own records as "trimmers" indeed earned a greater rate of pay than Plaintiff. Defendant advised the Court, however, that those "trimmers" who earned more than the Plaintiff were not really "trimmers," and should have been coded in a different job category in the records.

To date, Defendant has failed to produce accurate information to Plaintiff.[1] Defendant

---

[1] In a letter dated February 19, 2002, defense counsel offered to email corrected data. As of February 25, 2002, Defendant had not sent corrected data to Plaintiff. Further, the electronic database as produced appears to be incomplete. Files entitled "mbi1999payroll transaction", "mbi2000payrolltransaction", mbi2001payrolltransaction" and "mbi2002payrolltransaction" contain only transactions from 1997.

argues that its database would have to be altered or changed to reflect accurate pay information, and has refused to do so.

When defense counsel advised the Court that its records were inaccurate, counsel were faced with the prospect of trial in two weeks. At that time, Plaintiff had spent months of trial preparation based on critically inaccurate data. Accordingly, the Court advised the parties at the settlement conference that this serious failure to provide accurate discovery could not be cured in time for trial and that therefore, the documents produced and sworn to by Defendant would be considered as accurate payroll information as had been represented to this Court.

The Court also advised the parties that it would consider this matter formally by way of motion so that there would be a complete record of these discovery issues. The parties have had a full and fair opportunity to brief this matter and present the Court with affidavits in support of their positions.

## II. <u>Discussion</u>.

Plaintiff seeks sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedure which grants the Court discretion to order sanctions where a party fails to obey a court order to provide or permit discovery. Those sanctions should be tailored to the nature of the discovery breach to insure that the parties are treated fairly.

After months of discovery disputes and four discovery conferences with the parties, the very documents Defendant urged the Court and Plaintiff to rely upon on repeated occasions turned out to be inaccurate. Those inaccuracies came to light two weeks prior to trial, and after Plaintiff, her counsel, and experts spent countless hours preparing and developing her pay disparity case for trial. Given Defendant's repeated assurances to the Court that these reports

could and should be relied upon, the Court reasonably believed that Defendant had reviewed them, and insured that the information contained in those reports was accurate. It was of great concern to the Court that the very information in those reports which was not accurate, was the information which Plaintiff would have reasonably relied upon in preparing her case.

Upon further consideration, however, the Court has concluded that justice would be better served if the trial were postponed until the accurate information can be created and produced by Defendant, and Plaintiff is given a full and fair opportunity to review and consider it. The Court is sensitive to the fact that Plaintiff has incurred considerable time and expense both in repeatedly seeking the Court's intervention to insure that discovery was produced, and in relying on this inaccurate data. Accordingly, the Court orders Plaintiff's counsel to submit an affidavit to the Court detailing the time and expenses it incurred in seeking the production of payroll discovery in this case, and the time and expenses incurred by its contract counsel and/or experts in preparing the pay disparity case based on this discovery. The Court will consider Plaintiff's affidavit and order that Defendant pay to Plaintiff her fair and reasonable fees and costs incurred. Given that Plaintiff will now have to reevaluate the new and corrected discovery, Defendant will be ordered to pay those fees and costs within 10 days of the Court's Order. Further, in an effort to avoid repeated allegations of deficiencies in Defendant's production, the Court strongly recommends to the parties that Plaintiff's counsel, Defense counsel, and their experts convene together at Defendant's place of business to insure that all of the discovery which has been ordered to be produced in this case is produced in an accurate fashion. Defendant will be ordered to pay for the cost of Plaintiff's counsel and experts' time in making this trip to Defendant's facility. Subsequent to that meeting, it is requested that Plaintiff's counsel submit an additional

affidavit detailing the costs and fees incurred in connection with that visit.

These sanctions are specifically tailored to the discovery failures in this case. On the one hand, Defendant will be permitted to provide accurate data for the jury to consider. On the other hand, Plaintiff and her counsel will not be unfairly prejudiced by expending considerable time and expense relying on inaccurate data. It is anticipated that the production of accurate discovery and revision of Plaintiff's expert reports can be accomplished within 45 days. After the completion of this additional discovery, the case will once again be considered trial ready.

Based on the foregoing and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Sanctions (Doc. Nos. Doc. Nos. 39-1; 39-2; 39-3; 39-4; 39-5) is granted in part and denied in part as fully set forth in this Order.

Dated: March 8, 2002

Susan Richard Nelson

SUSAN RICHARD NELSON
United States Magistrate Judge