UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Ismelda Hahn,

Plaintiff,

v.

Civil No. 00-2282 (RHK/SRN)
**MEMORANDUM OPINION**

Minnesota Beef Industries, Inc.

Defendant.

---

By an Order dated May 24, 2002, the Court ruled on the parties' Motions in Limine, indicating that a Memorandum Opinion would follow. Based on the Defendant's representations, the Court ruled that its Motion in Limine To Exclude the Testimony of Witnesses Not Disclosed During Discovery (Doc. No. 35) was moot. The following are the Court's determinations and conclusions regarding the remaining motions in limine.

## I. Plaintiff's Motions in Limine

Hahn brings Motions in Limine to exclude two categories of evidence. The first category she described as evidence relating to her "illegal status." The second category related to a loan made by William Gilger, CEO of Minnesota Beef, to Hahn's mother and stepfather to pay for an immigration attorney to contest Hahn's potential deportation.

With respect to the first category, Defendant argues that the evidence at issue establishes that Hahn was untruthful on her job application materials – she affirmatively



MAY 29 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

misrepresented to Minnesota Beef that she was either a United States citizen or a foreigner authorized to work in the United States. Hahn contends that the evidence is irrelevant and will only serve to prejudice the jury against her. The Court concludes that evidence that Hahn represented that she was lawfully entitled to work in the United States when she was not is relevant to her character for truthfulness or untruthfulness and admissible, subject to the provisions of Rule 608(b).

The Defendant argues that the evidence of Gilger's loan to Hahn's parents is relevant to establish that Minnesota Beef and its agents harbored no bias against Mexican workers and "actually gave Ismelda Hahn preferential treatment as recent[ly] as 1997." Plaintiff argues that this evidence of specific acts of conduct is not admissible to prove a "good character." Furthermore, Plaintiff's contend, Gilger's acts as an individual may not properly be imputed to the company and its other agents. The Court agrees on both accounts and concludes that evidence of Gilger's loan is irrelevant under Rules 401 and 402, and is an improper attempt to prove character by specific acts of conduct, which is prohibited by Rule 404(b).

## II. Defendant's Motions in Limine

### A. Motion in Limine Regarding Summaries

The Defendant acknowledges that it has produced voluminous records relating to pay rates for employees at its plant. The Defendant anticipates that the Plaintiff will produce evidence purportedly showing pay discrimination for employees on the basis of

race, national origin, and/or pregnancy in the form of charts, summaries, or calculations. The Defendant moves the Court for an order requiring the individual who prepared the summaries or calculations to appear for testimony and cross-examination and produce in court the data on which the summaries or calculations are based. The Court will not direct the Plaintiff to produce in court the data on which any summaries or charts are based. Nothing in this ruling, however, excuses the Plaintiff from laying an adequate foundation for the admission of any chart, summary, or calculation created pursuant to Rule 1006 of the Federal Rules of Evidence.

**B. Motion in Limine To Exclude Inaccurate Data Regarding Rates of Pay and to Admit Evidence Reflecting Actual Rates of Pay of Employees**

The problems in this case relating to the Defendant's production of weekly pay rate data for employees in the Boning Room and the Quality Assurance area are significant and longstanding. These problems arose when the Defendant disclosed, shortly before this case's original trial date of March 1, that the electronic reports and electronic data produced to Plaintiff for the years 1997 and 1998 contained inaccurate information concerning the individual employees' rates of pay. The Defendant also disclosed that some employees may have been improperly classified on the payroll system because their job codes had not been updated when they changed jobs within the plant. Less than one month later, Plaintiff's counsel advised the Defendant that there were errors in the payroll transaction files for 1998, 1999, 2000, 2001, and 2002. On

March 8, 2002, the Court issued an Order imposing discovery sanctions and stating that "justice would be better served if the trial were postponed until the accurate information can be created and produced by Defendant and Plaintiff is given a full and fair opportunity to review and consider it." The March 8, 2002 Order followed the briefing on the Defendant's motion in limine and, as of the Court's May 24, 2002 Order deciding the Motions in Limine, the Court had received no correspondence or memoranda from either party regarding the continued necessity of this motion. In light of the procedural posture of discovery in this case, the Court concludes that this motion is moot and will therefore be stricken.

**C. Motion in Limine Regarding Evidence of Emotional Distress and Expert Testimony Regarding Emotional Distress**

The Defendant has moved to exclude testimony and other evidence that Hahn has suffered from depression and hair loss as a result of her experiences at Minnesota Beef, including testimony from her expert witness that Hahn's present emotional difficulties are caused by her employment at Minnesota Beef. Specifically, the Defendant challenges whether the opinion testimony of Hahn's expert – her treating psychologist – meets the requirements of Rule 702 of the Federal Rules of Evidence and Daubert v Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993), and its progeny.

Rule 702 and the Daubert line of cases are designed to ensure that expert testimony is reliable and relevant before being admitted into evidence. The expert opinions of a

healthcare provider who is treating the plaintiff are subject to the same standards of reliability and relevance as the opinions of a healthcare provider who has been retained solely for purposes of litigation. See Turner v. Iowa Fire Equipment Company, 229 F.3d 1202, 1207 (8th Cir. 2000) (holding that expert opinion of treating physician is subject to Daubert analysis). Hahn has disclosed the basis for her treating psychologist's opinion as consisting of three reports from her file: an initial evaluation and two progress notes. Based on the initial session with Hahn in July 2001, the psychologist recorded that Hahn was "experiencing nightmares around her treatment at the job at Minnesota Beef" and was "quite distraught over her overall treatment in that setting." The psychologist's diagnostic impressions and formulations were as follows:

> This young woman currently appears to be experiencing a depressive episode of moderate severity. She is having numerous symptoms consistent with depression, specifically sleep disturbance, social isolation, decreased energy, labile mood, poor concentration, sad affect and tearfulness. She does have some anxiety associated with her employment situation at Minnesota Beef. I do believe that she does warrant a diagnosis associated with anxiety as she continues to have nightmares related to returning to work, and has described episodes of trembling. I will diagnose anxiety disorder NOS [not otherwise specified] in addition to depression. Consideration was given to adjustment disorder. This was not chosen based on the severity of the patient's symptoms and the duration.

Accordingly, the psychologist diagnosed Hahn as suffering from "major depression, single episode, moderate severity" and "anxiety disorder, NOS." The psychologist also noted that Hahn suffered from thyroid problems, about which the psychologist indicated she would defer to Hahn's medical doctors.

The Defendant argues that Hahn's psychologist made no assessment of the cause of Hahn's depression in July of 2001. Having reviewed the documents that Hahn contends substantiate her treating psychologist's proposed opinions, it appears that the Defendant is correct. In the first evaluation, the psychologist focused on identifying Hahn's mental condition at the time, not determining the cause or causes for that condition. See Turner, 229 F.3d at 1208. Although the psychologist's notes indicate that Hahn reported having nightmares **about** her work at Minnesota Beef, she does not opine that the nightmares were **caused by** her former work at Minnesota Beef. Similarly, the psychologist notes that **Hahn** attributed her lack of confidence in returning to work largely to Minnesota Beef's treatment of her. The psychologist does not, however, expressly endorse Hahn's assessment. In fact, the psychologist reports that Hahn also felt that her ability to look for work was being negatively impacted by her inability to write in English and that she very much wanted to learn how to write in English. With respect to Hahn's complaints regarding hair loss, the psychologist indicates that Hahn was also suffering from thyroid problems; the psychologist does not evaluate, however, whether Hahn's thyroid condition contributed in any way to her hair loss.

Depression and anxiety disorder are complex injuries, requiring expert (as opposed to lay) testimony regarding diagnosis and causation. Ferris v. Pennsylvania Fed'n Bhd. of Maintenance of Way Employees, 153 F. Supp. 2d 736, 746 (E.D. Pa. 2001). The Plaintiff has not established an adequate basis for her expert's proposed testimony about the cause

of Hahn's depression and anxiety disorder. Given the complexities of the mental conditions at issue in this case, neither Hahn nor her husband nor any other lay witness may testify about their beliefs as to how Hahn's alleged emotional distress injuries were caused. Because the Plaintiff's proposed expert testimony about causation is not admissible under Rule 702, Hahn cannot establish an essential element of her claim for emotional distress damages, and the Court will exclude all evidence of Hahn's alleged emotional distress from the jury.

**D. Motion in Limine Regarding Incidents and Information Arising More than 300 Days Prior to Plaintiff's Filing of Her Charge of Discrimination**

The Defendant seeks to exclude all evidence concerning incidents at Minnesota Beef arising more than 300 days prior to when Plaintiff filed her EEOC charge of discrimination in August of 1999. The Defendant offers two grounds for this motion. First, it points out that Hahn quit working at Minnesota Beef in April of 1998 and voluntarily returned in mid-September of that same year. Therefore, any alleged discrimination that Hahn experienced prior to her voluntary return to the company should not be admitted. Second, the defendant contends that evidence relating to claims of discrimination by other former employees, including specifically Juan Olivarez, Laura Campos, and Sheila Guralski Kutz, should be excluded as irrelevant and unfairly prejudicial because those employees left Minnesota Beef in 1997, long before the 300-day window at issue in this case.

Even where a plaintiff presents an individual disparate treatment case, as opposed to a disparate impact case, background evidence about the defendant's workforce, such as events occurring prior to the window of the EEOC charge, can be relevant to deciding whether disparate treatment occurred during the charge period and, hence, can be admissible. See Summit v. S-B Power Tool, 121 F.3d 416, 422 (8th Cir. 1997) (discussing Eighth Circuit precedent). Given the difficulties inherent in trying to prove that an employer acted with a discriminatory animus, the Eighth Circuit has observed that a "blanket evidentiary exclusion" of such background information can be "especially damaging in employment discrimination cases." Estes v. Dick Smith Ford, Inc., 856 F.2d 1097, 1103 (8th Cir. 1988), superseded on other grounds by Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), as stated in Foster v. University of Ark., 938 F.2d 111, 115 (8th Cir. 1991). Therefore, the Court has directed the Plaintiff to prepare a written offer of proof that (a) identifies each witness who will testify about incidents occurring more than 300 days before she filed her Charge of Discrimination; (b) describes in reasonable detail the substance of that witness's testimony; and (c) identifies the managers or co-employees of Minnesota Beef Industries who were involved in the incident(s) about which the witness proposes to testify. The Court will rule on this motion at the final pre-trial hearing on Friday, May 31, 2002.

**E. Motion in Limine Regarding a Taped Conversation Between Sheila Guralski and Charles McCarthy**

The Defendant seeks to exclude a tape of a conversation between Charles McCarthy, the co-owner of Minnesota Beef who allegedly committed a battery against Hahn by improperly touching her buttocks, and Sheila Guralski Kutz, a former employee of Minnesota Beef who has alleged that she was sexually harassed at Minnesota Beef and paid less as a female supervisor than her male counterparts. On the tape, McCarthy purportedly threatens to "kick [Kutz's] ass" and "put [his] number 9 shoe up [Kutz's] ass." Hahn argues that the tape is relevant because she expects the Defendant's owners to portray themselves as "nice, well-behaved, benevolent employers." Hahn contends that the tape proves that they are none of these things and can be offered to "impeach" their characterization of themselves.

As a threshold matter, the Court notes that, under Rule 404(b) of the Federal Rules of Evidence, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Thus, the Defendant's representatives -- Gilger and McCarthy -- will not be allowed to prove their "benevolence" or "character for fairness" through evidence of acts of benevolence or fair treatment of their employees. (See, supra, part I (excluding evidence of Gilger's loan to Hahn's parents)). As for Hahn's proposed "impeachment," Rule 608(b) strictly limits the manner in which a party can attack a witness's credibility. That rule provides that

"[s]pecific instances of the conduct of a witness, for purposes of attacking or supporting the witness' credibility . . . may not be proved by extrinsic evidence." The tape is plainly extrinsic evidence and inadmissible. Finally, the Court concludes that evidence that McCarthy was verbally abusive to Kutz does not tend to make it either more or less likely that he battered Hahn or discriminated against her on the basis of national origin or her pregnancy. Even if such evidence had some marginal relevance to the Plaintiff's claims, the dangers of unfair prejudice and jury distraction far outweigh any probative value.

Dated: May 29, 2002

RICHARD H. KYLE
United States District Judge.